# Dean v. E. T., Va & Ga. R'y Co. and L. & N. R. R. Co.

*Action by Employee for Damages, for Personal Injuries.*

1. *Allegata and probata; general charge.*—Where an employee sues two railroad companies, alleging that he received personal injuries while in the service and under the control of both defendants, and the proof discloses that he was under the control and in the service of one of them only, when he received the injuries of which he complained, the general charge for each defendant is properly given.

2. *Servant for different masters; may be joint, and may be several.* The relation of master and servant may exist between an employee and two masters; when in the common service of both he is subject to the control of the joint authority. and, when in the service of one, he is subject to the authority and control of that one alone.

APPEAL from Shelby Circuit Court.
Tried before the Hon. LeRoy F. Box.
The opinion states the facts.

W. R. Oliver, and L. A. Dean, for appellant.

Chas. P. Jones, for the Louisville & Nashville Railroad Company.

Pettus & Pettus, for the East Tenn., Va. & Ga. Railroad Company.

HEAD, J.—The plaintiff sues the two defendant companies jointly for a personal injury alleged to have been sustained by him through their negligence. There are three counts in the complaint. The first count alleges that on and prior to the day of the injury the two defendants operated and used a certain switch engine for the purpose of switching cars from one track to another and in transferring cars from the East Tenn., Va. & Ga. Railway to the Louisville & Nashville Railroad and *vice versa*, in the town of Calera, and

that plaintiff was in the service of the two defendants as a switchman or car coupler in connection with said switch engine, under the command and direction of one J. W. Rhodes, who was the yard master of the defendants, at Calera, and while engaged in such service he was ordered by said yard master, under whose superintendence plaintiff then was, to couple cars that were standing on a side track on the Louisville & Nashville Railroad, in Calera, one of which was attached to the switch engine; and while attempting to make the coupling the iron draw heads of the two cars were driven in, and his arm was caught and injured, and that such injury was suffered by reason of defective works, machinery or plants connected with or used in the defendants' business, to-wit, the coupling and appliances used for connecting such cars; all of which but for the want of proper care and diligence would have been, or ought to have been known, to defendants, and were unknown to plaintiff. The second count is the same, except that instead of alleging that plaintiff was "*in the service of the defendants*," it alleges that he was a switchman or car coupler in the railroad yards of defendants, at Calera. The third count is the same as the first, except that, instead of the expression above quoted, it alleges that plaintiff was employed by the defendants as a switchman and car coupler. We can not construe these varying averments otherwise than as meaning the same thing. Taking the averments most strongly against the pleader, we are forced to construe the expression that plaintiff was in the service of the defendants, as in the first count, and that he was a switchman or car coupler in the railroad yards of the defendants, as in the second count, to mean that he was in the employ of both defendants, as alleged in the third count.

Under the settled rule that the *allegata and probata* must correspond, to entitle plaintiff to recover it was essential to prove that in respect of the injury of which he complains, he bore the relation to the two defendants which he alleged. The existence of this status, as the plaintiff saw fit to allege it, must have been established as being related to the tortious acts alleged as causing the injury. The Circuit Court gave the general affirmative charge in favor of the defendants. The propriety of this instruction will be tested by a consideration of the evidence. The roads of the two defendants intersect or cross at Calera. By arrangement between the two companies they employed a common agent at that place, Bridges, who had charge of the common office and directed the employees who did the work of selling tickets, handling freight and placing cars for both companies. There

was also an officer known as yard master, Rhodes, who was engaged in doing the moving and switching of cars for both companies from one road to the other, and on both roads. He did his work as directed by the said common agent, Bridges, or by the master of trains for the respective roads. This yard master, Rhodes, employed the plaintiff to work with him as switchman and car coupler, and he was so engaged at the time he was injured. The common agent, Bridges, testified that there was an agreement between the two companies that the E. T., Va. & Ga. Company should employ the working force to do the work and the L. & N. Company should pay half the expenses; that both Rhodes, the yard master, and plaintiff, the switchman, were employed by the former company, and the latter paid the former company one-half their wages. Bridges was paid by both companies and it is conceded he was the agent of both. It does not appear whether he was authorized to employ and discharge the yard laborers or not. The extent of his authority over them, so far as the evidence discloses, was to direct them in the discharge of their duties. It does not appear what person employed Rhodes, the yard master, the only testimony on that point being that of Bridges, the agent, that both the yard master and plaintiff were employed by the E. T., Va. & Ga. Company. Do these facts tend to show an employment of plaintiff by both companies to perform the service in which he was engaged when injured? The text books lay down, as a general principle, that the relation of master and servant exists when the person sought to be charged as master has the right to direct and control the alleged servant in the performance of the work upon which he is engaged, and to accept or reject the rendition of service by such servant. Thus in Wood on Master & Serv. § 305, it is said: "The relation of master and servant only exists where the person sought to be charged as master either employed or controlled the servant, or had the right of control over him at the time when the injury happened, or expressly or tacitly assented to the rendition of the particular service by him. He must at the time have had the right to direct the action of the servant, and to accept or reject its rendition by him." This language is substantially reiterated in 14 Am. & Eng. Encyc. of Law, 752.

It may be conceded that, under these principles of law, and the evidence as we have stated it above, the arrangement was such as to create a relation of master and servant between the plaintiff and both these defendants. These relations, however, were several as to the defendants, except

[Dean v. E. T., Va. & Ga. R'y Co. and L. & N. R. R. Co.]

as to any service the plaintiff might perform for them jointly under it. If, under the arrangement, a service arose for and in behalf of both defendants, then the plaintiff, called upon to perform it, was, as to such service, in their joint employment; but if a particular service was performed for one of the employers alone, the other having no interest in, or concern with it, then, as to such service, the plaintiff could not be said to have been in the employ of both jointly. The company having no connection with the particular service being rendered, would have no control over the servant performing it, and as to it there would be no relation of master and servant between it and the servant. Apply these principles to the present case. The plaintiff's testimony is as follows: "I was directed by yard master, Rhodes, to couple two cars that were on the Louisville & Nashville side track; one of the cars was a Norfolk & Western car; that one had just been brought from the East Tennessee, Virginia and Georgia Railway track and left it on the Louisville & Nashville side track, and then went with the switch engine and got a Georgia Pacific car that was on the tank track of the Louisville & Nashville Railroad and brought it to couple with the N. & W. car, and it was these two cars I was directed to couple while they were on the L. & N. track at Calera, Ala." Plaintiff was injured while attempting to effect this coupling. The other undisputed evidence shows that this coupling was being done in making up a train for the L. & N. Company to go through to Mobile and New Orleans over that company's road. One of the two cars in question was destined to Mobile and the other to New Orleans, and the train being made up and containing them departed shortly after the plaintiff's injury, to those points. It thus unmistakably appears, from the undisputed evidence, that the service plaintiff was engaged in when hurt, was exclusively that of the L. & N. R. R. Co., in which the other defendant had no interest, and in respect of which no right of control over the plaintiff. The averment of the complaint, in legal effect, is that, in respect of this service, the plaintiff was in the joint employment of both defendants. There is therefore a fatal variance between the allegations and the proof, and the general charge for the defendants was properly given.

Affirmed.